We'll hear now Council in the United States of America v. Sheldon Silver, another emergency motion. In this case, an emergency motion for a stay of surrender date. And before we begin, if Council would bear with me, I'd like to make a statement for the benefit of the proverbial record. So I'd be seated. We have before us the appellant's motion for stay of the October 5, 2018 surrender date and financial penalties for release pending appeal. We understand that Council for both sides are ready for argument, but it may be useful before calling on Mr. Fetter to set the stage a bit. The appellant was convicted on May 11, 2018 of two counts of honest services mail fraud, two counts of honest services wire fraud, two counts of extortion under color of official right, and one count of money laundering. The district court, having denied appellants Rule 29 and Rule 33 motions, the appellant was sentenced on July 27, 2018, to imprisonment for seven years, fined $1.75 million, and ordered to forfeit the proceeds of his crimes. In a characteristically careful opinion, Judge Caproni on September 17, 2018, found by clear and convincing evidence that Mr. Fetter had given to the community conclusions that the government does not dispute. Nevertheless, Judge Caproni denied in relevant part his motion to stay his surrender date and his financial penalties because in her view and that of the government, the appeal to this court raises no Within a week of Judge Caproni's order denying bail pending appeal on September 23, Silver's counsel filed on an emergency basis the motion that is now before us because the appellant would otherwise be required to surrender later this week. The motion was referred immediately to Judge Peter W. Hall on an emergency as an emergency one judge motion. On September 25, that is two days later, Judge Hall entered an order temporarily staying the surrender date and financial penalties until this three judge motions panel could consider and rule on the does not pose a risk of flight or a danger to the community, the remaining narrow questions before us today, question really, is whether Mr. Silver's appeal raises substantial issues likely to result in reversal or a new trial. In the past, we have had occasion to observe that a substantial question at this stage is one that is a close question or one that very well could be decided the other way. Silver's counsel have identified two errors of law that in their view satisfy this standard and errors that are not harmless and thus warrant bail pending appeal. Specifically, counsel contend that the district court erred by one failing to instruct the jury that to convict Mr. Silver they needed to find an agreement to accept things of value in return for official acts, and two, by instructing the jury that it could find Mr. Silver guilty without finding that he agreed to perform any particular official act at the time of the alleged quid pro quo. Before we turn to counsel to address these two narrow issues, we pause to note that neither the questions we ask of counsel nor our decision on Mr. Silver's motion are intended to intimate any view regarding the merits of Mr. Silver's appeal of his conviction. This is a merits panel and we are not here to predict the possibility of reversal. So we turn now to Mr. Federer. Thank you, Your Honor. And just for the sake of precision, the motion is for a stay and for bail pending appeal. As you say, Your Honor, there are... And if that application for bail were granted, how mechanically would that take place? I think that it would probably mean reinstatement of the conditions of bail that have existed in the district court. You filed a reply brief this morning? Last night, Your Honor. Around 5 p.m. last night. It's stamped, the clerk found out about it this morning. I'm sorry, Your Honor. It was filed electronically at 5 last night. We're supposed to be figuring out whether it's a close question and to be told for us an hour ago that, oh, here are the reasons it's a close question doesn't make this job any easier. Well, I certainly apologize for that. I did not realize that it wouldn't be distributed until this morning and needless to say... I've never heard of even a midsize firm in New York that couldn't have done that over the weekend, but go ahead. All right. Thank you, Your Honor. There are two basic errors here that raise substantial issues, as Your Honor identified. I want to address them individually, but there's a core issue underlying both of them, which is that both the district court and the government here lost sight of limitations that the Supreme Court has said are critical to distinguishing conduct that may not win any good government awards, but is not outlawed by the federal bribery laws, and the specific conduct that is unlawful under the bribery laws. Federal bribery law does not prohibit everything that seems bad or distasteful. It prohibits something very specific. It doesn't prohibit providing benefits to powerful officials to curry favor with them. It doesn't prohibit officials from taking actions that they know affect their contributors or benefactors. What it does prohibit, particularly after McDonnell, is when something in the narrow category of what McDonnell identifies as official acts is exchanged for benefits provided to the official. So there are two things. It has to be an exchange, not unilateral conduct by one side, and it has to be for something that McDonnell defines as an official act. The district court and the government erased both of those requirements. So first, the requirement of an exchange. The district court refused to instruct that there had to be an agreement between the alleged bribe payers and Mr. Silver, even told the jury to focus only on Mr. Silver's intent, not the intent of the alleged bribe giver, and that's not the law for several reasons. And, I mean, first of all, there are a lot of cases we've cited, obviously, that refer to this as saying bribery involves an agreement. But let me start just with the basic concept. Everything, even looking most recently as McDonnell says, that to cross the line from something where somebody may be doing something for a benefactor, but that we allow public officials to do or at least don't make it criminal, into bribery you need the exchange of a thing of value for an official act. An exchange necessarily involves two parties, not just unilateral intent of the recipient. There's no exchange without it being exchanged between two parties. And then the text of Section 201, which is what we look to now for honest services fraud bribery and for Hobbs Act bribery, the text of the statute says that the thing of value has to be received in return for being influenced. It doesn't say received with the intent of being influenced or expectation of being influenced. It has to be in return for being influenced. So, again, it's an agreed-upon exchange, not unilateral state of mind. And you mean if the recipient thinks, the recipient of the money thinks and acts as though it is a bribe and does something for the person who gave the money because he or she thinks it's a bribe, it's not criminal unless the person giving it also thought it was a bribe? That's right, or at least unless the person giving it thought it was in exchange for official acts. Okay. But then the person who's giving it, we're talking about the mens rea. I think that's a word I learned in law school once. The mens rea of the one who gives as well as the one who receives rather than just the one who receives, who in this case is the one who is indicted and tried. I don't know, Your Honor, if mens rea is the right term, but basically it does, however you want to term it, it has to be offered in exchange for the official acts and not for what the district court permitted and what the government expressly and erroneously argued multiple times here for that they said that it was enough. Two big problems here. The government argued repeatedly in summation, number one, that it was enough if the money was given basically to curry favor with, because Mr. Silver was a powerful official, which just reads out the element that it's given for something specific, and the government also said it's enough for you to convict if, when Mr. Silver was undertaking the official acts that we're talking about, he had anywhere in his mind the fact that he had received these benefits, and that's a huge problem because that again eliminates the textual. Does that make it an agreement? Are you saying there must be an agreement in one sense or another? There must be an agreement in one sense or another. Certainly the statute itself and the very notion of exchange. That is central to the issue here, isn't it? Yes, and I think that there is a huge difference between somebody giving somebody benefits or it could be campaign contributions, but somebody benefiting. Campaign contributions are different, aren't they? Are they treated differently? They are only treated differently in that they're the agreement needs to be expressed. But, I mean, look, McDonnell itself offers an example of something where someone provides benefits. It's not campaign contributions. They say, you know, someone who provides like tickets to a ball game to an official, right? You can provide benefits to an official. You can even do it, as in Sun Diamond and the gratuity statute. You can even do it because it's a powerful official that you want a relationship with, and that is different from, and an official is allowed to do things that affect people he's received benefits from. It may not be attractive to everybody, but that's not bribery. Bribery is the exchange of one for the other. There's no such thing as an exchange only on one side. And the jury was also, again, the government repeatedly said this, if you find that he took actions with what he received anywhere in his mind, that's enough to make him guilty. That doesn't describe bribery. That describes conflict of interest. It reads out, again, the element, it has to be that the benefit was given for the official act, not that the official. I'm not at all clear where you derive this requirement of an agreement. It's hypothetical. There's a key vote on Thursday in the legislature that is going to impact my business. I'm acutely interested in it. I go into the legislator's office on Monday, leave a bag of money on the table, thank him for his time, and leave. No words, there's no discussion about the vote. There's no discussion about quid pro quo. There's no discussion at all. I don't see, I'm not clear that I see an agreement under those circumstances, but I certainly see bribery. But completely agree, Your Honor. And the key there is you tell the jury, if you find that the money was given for the purpose of getting this vote, and that it was accepted with the undertaking to make that vote, the jury can infer that that was a bribe. But what the instructions here said, and it's not just the technical question of whether it said there has to be an agreement, the judge specifically told the jury it doesn't matter, it's only Mr. Silver's intent that matters, it doesn't matter whether it was offered in exchange for official act. It can have been offered as the witnesses testify, the government's own witnesses, like Mr. Tabb said, look, he was an important person, I wanted to preserve the relationship. That is different from saying, now, it can be that if there are specific things, if it's being exchanged for specific things, that's fine, but something given to curry favor is not the crime of bribery. And without even getting to the official acts problem here, if you'll permit me to say something briefly, the official acts issue here is... Well, before you, and you'll have the time. Thank you. Forget that red light. Let's stick to agreement. I just want to make sure I understand your argument. You're arguing that the district court should have required an explicit or express agreement? No. No, no, not at all. We didn't request that. That's not required by the law. But the district court should have required... My argument was that the Supreme Court, in the case, incorporated an agreement requirement. But not an explicit agreement requirement. No, no, there's a clear distinction in the Supreme Court law and this Court's law. There doesn't have to be an explicit agreement because, of course, in the cases of bribery, there are all sorts of situations where it won't be spoken. So-called wink and a nod. Yes, yes. But the jury, you can't just dispense with the jury having to find the wink and the nod. You can't... What about my hypothetical where there was no wink and a nod and there was not a word exchanged about the money? I'm sorry. Wink and nod is maybe a bad metaphor here. The wink and the nod is giving the person the bag of money under circumstances where they know what you want, you know that they know what you want, and the jury will be permitted to infer that, but... In that case, there's no agreement. No word is exchanged. I don't know what you would characterize in that hypothetical as an agreement. I would say that accepting the money and undertaking the vote... Two things about that, okay? There are two things. One is I don't agree with that. I think a jury could definitely infer that under those circumstances, accepting the money and making the vote is sufficient evidence of an unspoken agreement that he was taking the money to effect the vote. Well, if all we need now is an unspoken agreement, it seems to me that what you're saying is that a jury is permitted to infer the existence of the agreement from the circumstances. Yes. And if there was no shaking of hands or if there was no wink and no nod. Correct. From all of the evidence. That is correct, and that's what the case is... So in what sense was the district court's instruction wrong, or in what sense did the district court preclude a finding of that sort? Well, the problem is not precluding. The problem is that it's one thing to say that the jury can infer it from the circumstances. It's another thing to do what the district court did, which is to say we can just dispense with the jury having to make a finding at all. And just... That's not what the district court did. It is what the district court did, Your Honor. If you look at the instruction... Tell us what it did. Yes, okay. So if you look at the instruction on honest services explaining quid pro quo, the district court, first of all, basically said that the understanding with which the benefit is given doesn't matter. Specifically, it told the jury to ignore what the payor understood. This is at 2044 of the transcript. The intent of the party giving the thing of value may be different from the intent of the recipient, number one. Then says the government only has to prove that Mr. Silver, not the bribe giver, understood that as a result of the bribe, he was expected to exercise official influence or take official action for the benefit of the payor and intended to do so. Why isn't that an implicit reference to an agreement? Or doesn't... Why isn't that an agreement without the use of the word agreement? Because... And this then... If you look at what was actually argued here in the rest of the instructions, not only is... I mean, first of all, when you say it doesn't matter what the bribe payor is thinking, that is saying you don't have to find an agreement. But the government argued and the district court said at various points that it's enough if the money was given to him... There are various things that were not in exchange for anything, but just because he's a powerful legislator, because he wanted to have a relationship. All of those things are... We may well view as unsavory. If I were New York State, I wouldn't necessarily allow legislators to have clients and get fees and all the rest. But those aren't within the scope of bribery. In my hypothetical, suppose we've got no statement whatever from the payor. After the bag of money is left, the legislator goes to his pals and says, look, they came through. I've got the money.  That's not sufficient to convict for bribery? Your Honor, not only is that sufficient, what I've been trying to say, I think, is that you don't even need him to say that. That the jury, very important here to distinguish between what evidence is going to suffice and what the crime is that you're asking the jury to find. Right. But I mean, what the elements are. I understood the transmittal of the cash to be a bribe. Right. And acted accordingly. And just from giving the cash and taking the vote, I would, I mean, that case isn't for us, obviously. A jury could infer from that that that's exactly, that was something given in return for being influenced on the vote. You don't need this speech. There was no agreement. There was no express agreement. There was no evidence of what the payor had intended. The problem here is what you're dealing with is something completely different where it's not the question of is there enough to understand that this was in exchange for that. The jury is being told it doesn't even, the money can have been given for completely other reasons or in a general desire to curry favor. Supposing, I like, well, change the hypothetical. Yeah. And have the person who pays the money, he's got a sack full of, you should pardon the expression, a sack full of money. So to speak. Yeah, so to speak. And he's had a bad night, lack of situational awareness. He has his bag and he thinks he's giving it to his banker. And instead he puts it on the desk, he walks out, it turns out it's an assemblyman. Right. And the assemblyman says, gee, that's great, okay, I'll vote for it. So the payor has no idea that this is involved, but the recipient thinks it is and acts on that basis. You say there's no agreement. Right. That's not bribery. That is not, bribery is an exchange, right? Again, look at the text of the statute and what the language of the cases say. The text of the statute says that the thing of value has to be in return for being influenced. And that's not a one-sided thing. And going back to your hypothetical, so the first question is, we're talking about what's enough to infer an agreement, but my point is there has to be an agreement. What the judge was permitting here and what the government basically expressly argued is that if the person with the money at some point three years earlier had provided the money or given him a client or a job, and then he takes a vote that happens to benefit that person, the only thing standing between him and being convicted of bribery is, number one, prosecutorial discretion, whether the government decides to prosecute it, and number two, whether the jury is going to decide that the legislator did or didn't have in mind at the time he voted that three years ago he received a benefit from the person. And that is not the crime of bribery. Again, like if you look at Sun Diamond, which is a different part of the statute but still makes clear, it's not unlawful under federal law, which is not a code of ethics, for people to provide benefits to curry favor with powerful officials. Saying that you can convict if the money was given for that and if the jury later decides, well, when he did something he had in mind he received it, that's not bribery. That's a different offense trying to be shoehorned into bribery. I have to say something about, if it's okay, about the McDonald issue here, because it's also the way this was tried and instructed is something that basically neuters McDonald and is frankly incoherent in terms of how it's instructed to the jury. Pre-McDonald, there's a stream of benefits theory in this circuit. If somebody agrees, the legislator gets something like as a retainer or whatever in exchange for I'm going to do you official favors, that's a legitimate theory. That made sense pre-McDonald because anything the official does in his official capacity was an official act. Post-McDonald, for a couple of reasons, one of which is textual, but before you even get to the text, conceptually it's incoherent to say that there was an agreement in the abstract to perform official acts as opportunities arise. Because nobody in the real world is sitting there with McDonald and talking about I'm going to do things for you that are official acts. At best, we don't even have it here, but let's say that there were an agreement. If you give me referrals, I'll find ways to do favors for you. But the favors may be things like we see stuff that happened here within the statute of limitations period is writing letters of recommendation, saying I'll help you figure out how to navigate a process to do an event that never ends up happening. There's no real world sense in which someone is making I'll give you this, if in return you agree you're going to do me favors, and by the way the favors have to be official acts. So conceptually it makes no sense, but also because now that at the time of the Ganim case, when we said it didn't have to be identified acts to be official acts and you could have a stream of benefits, we weren't rooting honest services bribery and Hobbs Act extortion in section 201. But now we are after McDonald. And section 201 says that it has to be, this is 201B2A, right, in return for being influenced in the performance of any official act. And so the question is, does any official act have to be actually identifiable acts that you're agreeing to do, or is any official act, can it be an abstract agreement to do whatever official acts in the future? That textual question has already been answered for section 201 in Sun Diamond, which addressed a different part of the same statute, but it's the same phrase, any official act. And there the question was to be in a legal gratuity, can it be in general, or does it have to be linked to particular acts? And what the court says about this specific language is, I'm sorry, I'm just pulling up the place where I have it. Yes. I mean, court basically says, and we quote the language in our opening and reply brief, that if you look at the phrase any official act necessarily connotes specific, it has to be specific acts. And frankly, the idea of making the distinction that McDonald makes is meaningless if you're not talking about specific acts. How are you going to decide whether what's being agreed to is to do the things that are in the narrow category? And it's illustrated because, okay, so here. Here's Sun Diamond 526 U.S. 398 at 406. The text says in return for any official act, for because of any official act, means for because of some particular official act of whatever identity, and then further down in the same paragraph, same page, the insistence upon an official act carefully defined seems pregnant with the requirement that some particular official act be identified and approved. The reason, one thing that ties it all together is if you look at the facts of this case and how this abstract, completely non-real world instruction affects things and neuters McDonald is that if you look at the facts here outside of the research funds that were definitively stopped long before the statute of limitations here, the things that are happening in the statute of limitation are things like recommendation letters, which very hard to imagine are official acts, and the one official act in the limitations period is some meaningless proclamation, and it's a huge difference between telling the jury that they would have to find that the benefits were provided in exchange for this proclamation that presumably no one cared about, was never discussed, Dr. Taub had never heard of it before it happened, and telling them it's enough if you find in the abstract there was some agreement to undertake official acts that's not linked to anything. Mr. Fetter, I'll be giving the government some extra time as we've given to you, but as a final matter, I'm just asking you this final question. Take the court's opinion vacating the original judgment, with which I'm sure you and others are familiar, and the mandate remanding to the district court. Is there some way that you can identify precisely what the district judge's failure was? That is, given the opinion, our original opinion, in what way did she deviate or ignore the court's mandate? So I think that the McDonnell issue is the clearest, because the court is saying that you've got to find that, well, first of all, the court's opinion refers to quid pro quo bribery as an agreement, and the court doesn't require an agreement, doesn't even require anything approaching an exchange. And on McDonnell, just... So there's no obvious deviation from our mandate? Oh, I mean, no. In terms of specific language, that, you know, no. I mean, this court, I don't think, you know, it didn't address these issues one way. I wouldn't say that this court's opinion expresses a view one way or the other on these issues. It does not. Right. And so this is a new... I mean, I think it says things that bear on the issues, but this isn't something where the district court is refusing to follow this court's guidance, except in that I think that the way this was instructed does bespeak an inability, I don't know whether it's an unwillingness or an inability, to take McDonnell seriously in saying that bribery is narrow. It's not just for an official agreeing to do things when they're receiving something. It's a very specific crime where you've got to find they were doing specific things. And the way this is instructed just, you know, did not left the jury with actually no real way or no need to enforce that important dividing line between conduct that we may find distasteful, as the court says in the original opinion, and the specific things that the bribery laws actually prohibit. Let me ask you about the timing of the appeal. This is a kind of clerical question. I assume that you would not object to expediting the appeal. Not at all. All right. Thanks very much. We'll hear from the government. You know, if the presider will permit me, before you start, I'll give you a little background. And this is entirely, this is sort of, I'm saying it for me, and I'm not asking for either empathy or sympathy, whichever is harder. But the problem with this appeal, this motion, is not that the crime here, we hear motions, as you all know, we hear these motions to stay pending appeal frequently. And the problem isn't that this is somehow easier to grant because it's a guy who's not going to run away and it's white collar. It's actually that this is a more profound and important case than the run of cases that we hear. I'm talking about my view. And the problem I have is that at the end of the day, the question is, I think as we have stated it, whether it's a close question, whether it could be decided one way or the other. I think that's our way of phrasing it. And for me, that's a question having to do with the merits. We're not making a merits determination. It has to do with the merits. And I find it difficult to approach a merits question based on this much served. It may seem to some people to be a lot, but they obviously don't know what a record on an appeal, an appendix looks like, which will be up to here. This and your serve just nine days ago. Your response served on Friday. Their response, perhaps this is a tactic, but their response that we didn't see this morning until this morning. Okay, it's not a tactic. And my concern really is the difficulty of deciding something having to do with the merits in this manner, rather than the way we ordinarily decide merits questions. And that is in the background of my concern. And I thought maybe it would be helpful for you to know that. I'll start there. Good morning. May it please the Court. I'm Assistant United States Attorney Daniel Richenthal. I represented the government before the district court. I represent the government on appeal. In light of Your Honor's comments, let me actually flip the remarks I was going to make and start not with the law, but with harmlessness. But I do want to return to the law, and I want to actually take up Judge Parker's hypothetical. So the district court made an express finding in footnote two, but it's a lengthy footnote, that even if an agreement were required, it would not matter at least as to the asbestos scheme. And that is manifestly not a clearly erroneous finding. It's not a clearly erroneous finding for at least two reasons, one factual and one instructional. So I'll take those in order. First, factual. The facts here with respect to the asbestos scheme include, among other things, Mr. Silver instructing a friend to send a message to Dr. Robert Taub that he wants cases. Dr. Robert Taub begins to refer those cases. Mr. Silver then sends a second message, write me a letter for state funding. Dr. Taub responds. After that letter is sent, Mr. Silver waits. Nothing happens. Once he gets his first check, more than $100,000, in return for those referrals, state funding. And it continues for years. The evidence of an agreement here was overwhelming. Dr. Taub's credibility was not challenged, expressly not challenged. He said they had an implicit or implied understanding. He talked about what he meant. And over and over and again, there's a this for that, a this for that, and a this for that. And it's not just state funding. Years later, the referrals drop. Mr. Silver goes to Dr. Taub and says in so many words, why'd they go down? And Dr. Taub explains, well, he got funding from another source. He got $3 million from another law firm. So Mr. Silver springs into action. He pushes through the official proclamation. For the first time in two decades, he recommends Dr. Taub's son for a job, and so on. Just go back there. I just want to understand the case. The $3 million from another law firm, what was that? That's the Simmons Law Firm in Kansas City, Missouri. Simmons had entered into an agreement that allowed Dr. Taub's research to be funded to a greater degree than actually New York State had, and the referrals dropped off. They didn't go to zero, but there's a meaningful drop. I think it's Government Exhibit 1508 is a chart that times this out. And Mr. Silver goes to Dr. Taub and says, what happened? Dr. Taub explains. Mr. Silver springs into action, and the referrals go back up. And that's not just the facts. That's what Dr. Taub said happened. So there's the factual response, which is there plainly was an agreement here, at least as to the asbestos scheme. But there's also a legal one. On the extortion. Your point, I take it, is that this whole question of agreement that we've tried to, with the help of my colleagues, pursue, is somewhat metaphysical or theological because you're stating the agreement is clear, and the instructions would have made the concept of an agreement clear. Two responses. First, yes, and that is what Judge Caproni, who presided over the multiple-week trial, expressly found. For all the reasons I've said and more, both in direct and cross-examination, Dr. Taub made this point, and it's corroborated with his own words. It's corroborated by checks. It's corroborated, among other things, by what Sheldon Silver said to Dr. Taub when he was approached by law enforcement. He asked Dr. Taub, did you tell them anything? That question makes no sense, unless Sheldon Silver knew that he and Dr. Taub were in a corrupt relationship and had been for years. So that's my factual response. It's a multiple-week trial, but that's some of the evidence that supports Judge Caproni's finding. It certainly wasn't clearly erroneous. But there's also a legal one. If Your Honors look at page 13 of her affirmation in opposition, which refers, among other things, to transcript page 2054, this is the extortion instruction. It's not the same as the honest services instruction. It actually obligated the jury to find that the people paying Mr. Silver, in fact, were motivated by seeking official action and that he knew it. We're in your affirmation. Page 13, paragraph 30. Yes. So I'm quoting now, and I'm going to start halfway through the block quote. And this was with respect to all extortion counts, one of which covered the asbestos scheme, one of which covered the real estate scheme. The government must also prove, beyond a reasonable doubt, that the extorted party was motivated, at least in part, by the expectation that as a result of the payment, Mr. Silver would exercise official influence or decision-making for the benefit of the extorted party or refrain from taking action to the detriment of the extorted party, and that Mr. Silver was aware of their motivation. And the jury convicted Mr. Silver of all counts. So if I understand the government's position, this is an instruction on agreement. It didn't use that word to pick up on Your Honor's point from a few minutes ago, but absolutely. This requires the jury to find the parties were subjectively, literally motivated to exchange money for official action, and that he knew it. That defeats their argument as a matter of law. The jury convicted of all counts, even if the honest services fraud discounts perhaps should have had similar language, it matters not. That's my argument as to harmlessness, which I actually think makes this appeal easier because this is an appeal about a specific case. And in this specific case, any error was harmless. But I do want to return to whether there's error at all, even though the court doesn't have to find that one way or another and doesn't intend to intimate the answer one way or another. And the answer is there was no error for three reasons. First, the fundamental argument here that an agreement is required collapses a substantive offense and a conspiracy offense into one offense. That is an extraordinarily unusual proposition. It exists in an infinitesimal number of statutes. The only one I'm aware of is what's known as a Klein conspiracy, that is 18 U.S.C. 371, which criminalizes an agreement to defraud the United States but doesn't actually contain a substantive offense. I'm not aware of any others in decades. But the court doesn't have to rest on sort of broad pronouncements about what's usual or unusual. It can look here to two things. One, the text of 18 U.S.C. 201, which is the premise for these charges after McDonald. 18 U.S.C. 201 expressly criminalizes receiving a payment intending to be influenced for official action, accepting a payment intending to be influenced for official action, soliciting such a payment, or agreeing to do so. If the defense is right, multiple of those words are read out of the statute. It's no longer a crime to solicit. It's no longer a crime to receive. It's no longer a crime to accept. It's only a crime to agree. That is not the law. That cannot be the law. And it's not just because 18 U.S.C. 201 is crystal clear. It's because multiple precedents, including of the Supreme Court, must be wrong if the defendant is right. Evans involved an FBI agent talking to an official. Contrary to the defense's repeated suggestion that Evans had an agreement, it cannot be so. It was an FBI agent. The FBI agent did not intend to bribe the official. The jury instructions in Evans are actually set forth in the Supreme Court's decision. And the entire discussion treats them as totally appropriate. And its holding, which is also quoted in our affirmation, explains it's all about what the official's thinking. And that has to be so because, again, he was speaking with an FBI agent. But it's not just Evans. Boylan involved undercover FBI agents. Alfisi involved a confidential witness or a confidential informant. Case after case in this court, as the court knows, involve confidential informants, FBI agents talking to officials. When the official agrees to accept a bribe, a crime has been committed. That's not true if Sheldon Stover is right. Now, it's important, I think, to make this granular, so I want to go to Judge Parker's hypothetical. If an individual walked into a congressman's office, or in this case, the assembly leader's office, put a bag of cash on the desk, and the official took it, and it were clear that the official understood that was intended as a bribe, that it's subjectively in his head, it's a bribe. It doesn't matter what happens next. But I want to flip it because that's referring to the payor. I want to talk about the payee. Imagine for a second, instead of the bag of cash on the desk, the official sends an e-mail to the same individual and says, if you put a bag of cash on my desk, I want to vote your way tomorrow. If you put a bag of cash on my desk, I'm going to vote your way tomorrow. Now, imagine that three scenarios. One, the person never receives the e-mail, just gets lost. Is there any question that was soliciting a bribe under the text of 201 and under precedent? No. The official's guilty. It doesn't matter if the e-mail literally was ever received. Scenario two, the person responds, I agree. The only thing that just happened is now we have a second crime called conspiracy. The first crime, soliciting a bribe, that already happened. It was complete before the person responded. Scenario three, the person says, I really, I don't want to give a bribe. Or maybe he or she runs to the FBI. If the defendant's right, there's no crime in scenario three. But scenario three and scenario one and scenario two are identical with respect to the official's actions. They're identical with respect to the official's intent. And they fit the statute, which again expressly criminalizes offering, receiving, soliciting, or accepting a bribe or agreeing to do so. All three scenarios are crimes. One of them, the one that involves an agreement, is also a second crime called conspiracy, which was not charged in this case. That is why the defendant's simply wrong. He's not wrong. There is a crime involving bribery that involves an agreement. But it's conspiracy to commit bribery. It's not bribery. So to put it more finally, yes, it's about Mr. Silver's intent. He's the defendant on trial. He's charged with a substantive offense, receiving or accepting a bribe. It does not matter whether Dr. Taub thought of it as a bribe, either secretly or explicitly. All that matters is did Mr. Silver. The evidence of that was overwhelming. They don't even challenge it. And even if it weren't, because of the extortion instruction, which required Mr. Silver to have a belief about Dr. Taub and those paying him, and because of all the facts I've identified and those of Judge Caproni, it was harmless. That resolves this motion, even if ultimately the legal question might have interesting aspects to it. Now, unless the Court has questions about agreement, I do want to turn to as opportunities arose. So let me turn to the other claim, which was not presented before the District Court in seeking bail pending appeal. It was presented earlier in the litigation, but it matters that it wasn't presented in seeking bail because Your Honor doesn't have the benefit of Judge Caproni's analysis as to whether that, too, was harmless. It was, and I'm going to talk about it. But before I talk about that, let me again talk about the law. As opportunities arose. This Court has already decided in Ganim and a series of other decisions that that is a valid theory of law. Those post-Date Sun-Diamond. Sun-Diamond, by the way, was a gratuity case anyway, not a bribery case. So the only question is, did McDonald change the law in this respect? It did not. First. But it's an important question, no? As a matter of law generally, absolutely. In this case, no. Well, and we're a motions panel. We're just trying to figure out that given the circumstances here where there's no risk of flight and there's no risk of danger, direct danger to the community, why not fight this out before a merits panel in due course with the defendant being at liberty? Because Congress has decided that defendants have a burden to demonstrate a substantial issue, which doesn't just mean a legal issue that might be winnable. You just told us it was a pretty substantial issue. As a matter of law generally, absolutely. We bring corruption prosecutions all the time. We should know that's a valid theory. But in this case, no. So maybe I'll actually flip what I was going to do and go to harmlessness again. This is what Dr. Taub said when asked, what did he have in mind? It's page 272 of the transcript. This is a direct quote. As a legislator, he, that is Mr. Silver, could help mesothelioma patients in a variety of ways. For example, he could help regulate laws relating to asbestos production or asbestos use, and particularly asbestos inspections within the state, which were weak at the time. He could influence legislation to help support research in cancer in general and mesothelioma in particular. He could also help, for example, regulate insurance companies in the state so they would not balk at supporting clinical trials, which they would like to consider as experimental, but actually were very helpful in treating patients. Every single thing he said is official. Now, to be clear, he didn't know precisely which one of these things Mr. Silver would do or precisely when. But every single one is official. So, again, even if the jury had not been told as opportunities arose, it's plain as day that at the agreement stage, the very beginning, we're talking about official action within the meaning of McDonald. So, again, any error was harmless. But I do want to push back on the idea that this is a closed question. In our view, it's not for a very simple reason. First of all, in the McDonald case itself, there actually was a retainer or as opportunities arose theory. The Supreme Court stated that and did absolutely nothing with it in the decision, suggesting it didn't intend its decision to undo decades of case law in multiple circuits. But more fundamentally, what McDonald's about, I think as the defendant agrees. Another important question that appeals should reflect on, the one you just identified. Language used by the court but not relied on by the court. I mean, I think it's an interesting question when there is such language. One of our colleagues once said, we have interesting question jurisdiction. I'm not saying your honors lack the authority to decide McDonald said that. What I'm saying is McDonald didn't say that. But it's not simply because they referenced as opportunities arose. It's because it's not inconsistent with the decision at all. What the decision's about is there's a set of actions officials take that under the text of 18 U.S.C. 201 are deemed official. That's what it's about. It's not about timing. It's actually always been the law, long before McDonald, that a crime starts when it starts, which is to say, if Mr. Silver took a bribe intending to be influenced in official action, the crime starts when he had that agreement, or to use our preferred language, when he accepted it. That's always been the law. All that McDonald decided is, what's in his mind? Is it this subset of actions that are deemed official? And the question has to be yes, not just because that's what McDonald says generally, but, again, in this specific case, the facts here cry out official, multiple streams of state funding, a proclamation, an agreement to assist with permits. Those are almost trivial, aren't they? The proclamation or the permits, Your Honor? Both of them. Well, the permits certainly were not trivial to Dr. Taub. The permit is the legislator, and nothing happened. I don't know, did he ever do anything about the permit? It's unclear from the record whether Mr. Silver did anything. But if your answer is the question of which way people were running through the district, wasn't that it? In general, yes, but more specifically, what they wanted to do was have a fundraise, excuse me, a race for fundraising in and around the World Trade Center. That is exceedingly difficult, and so they reached out to Mr. Silver's office. But these two official actions almost seem, it's not for us to decide, but just offhand seem almost trivial. Again, the permits to Dr. Taub were actually anything but trivial. I mean, he talked at length about this race, the importance of the fundraising. Mr. Silver agreed to meet with him. They talked about how difficult it would be. This was actually not trivial. The proclamation, I think different people might have different views as to how trivial or not the proclamation was. But as Your Honor just said. It turned out routinely. You might get one yet. You probably will. Thank you. Well, look, as I think, frankly, the opinion, the original opinion suggests, and I think Your Honor's question suggests, this is actually a jury question, right? The challenge here is an instructional one, right? It's not a sufficiency challenge. Mr. Silver made that challenge, and it was rejected. He's not raising that in this motion. So the question is, was the jury properly instructed? It might be, Judge Gerbanus, if you were on the jury, you might say I'm not counting the proclamation, although there would be plenty of other evidence for you to rely upon. But the question here is instructional. And as opportunities arose, fits squarely within McDonnell, and in any event, it's harmless on the facts of this case. That's true, by the way, not just for the asbestos scheme. That's actually also true for the real estate scheme. In 2011, which postdates the statute of limitations, Mr. Silver advocated for a particular real estate bill that was advantageous to the people paying him. He did that after having a secret meeting with the chief lobbyist of one of those companies, ensuring they were satisfied. And then they signed a secret side agreement, as I know Your Honor knows from the original decision, on a street corner so that he could keep getting paid. Mr. Silver had arguments he presented to the jury about why that's not nearly as corrupt as it sounds. We had arguments, and the jury decided it was. That's a very discreet action. So are all the votes that he either made or had his proxy give on the Public Authorities Control Board, the PACB. Those are a series of discreet actions worth more than a billion dollars to the party paying him. So again, as opportunities arose here, it's harmless. Now, I do want to respond to one suggestion. Both in the moving papers and this morning, my opponent has suggested that even if everything I said is right, this Court should be troubled by statements made in summation or rebuttal that suggest a different view of the law. Those statements are cherry-picked to an extreme degree. Time and again in summation or rebuttal, we said to the jury, look at the vote on the real estate legislation, look at what preceded it, look at what followed it, just as I just said. It is telling that the statements that my opponent refers to were not objected to in the District Court. And they weren't objected to in the District Court because they were entirely proper. Unless the panel has further questions. Let me ask you about expediting the case. Do you have any problem with that? No, Your Honor. Because you don't believe both sides want to move this as quickly as possible. We're happy to move it as quickly as the Court would like. All right. We'll take a recess, and we'll come back. We may or may not have a decision on this to deliver. But in any case, we'll come back in a few minutes. We're in recess. Momentarily. This is our order. On September 23, 2018, the defendant, Appellant Sheldon Silver, moved for an emergency stay of his surrender date and financial penalties and for release pending appeal of his conviction. The government opposes Silver's motion. The motion is granted. Silver's surrender date and financial penalties are stayed, and his request for release pending appeal under his current conditions of release is granted. The appeal is expedited. Silver's initial brief will be due on or before October 26, 2018. The government's response will be due on or before November 14, 2018. Silver's reply brief will be due on or before December 3, 2018. The appeal will be regarded as ready for oral argument by a merits panel as soon as possible after December 3, 2018. The stay expires seven days after the merits panel deems the matter submitted for decision, without prejudice to any other action on the matter by the merits panel at that time. Action on this motion is not intended to and does not intimate any view of any kind concerning the gravity of the offenses charged or the merits of this appeal. It is so ordered. Thank you very much.